NOT FOR PUBLICATION (Doc. Nos. 6, 7, 9.)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| DOM WADHWA, M.D. | : |
| Plaintiff, | : |
| v. | : Civil No. 15-2777 (RBK-KMW) |
|  | : **OPINION** |
| SECRETARY, DEPARTMENT OF VETERANS AFFAIRS | : |
| Defendant. | : |

**KUGLER**, United States District Judge:

This matter comes before the Court on the motion for summary judgment of Defendant Secretary for the Department of Veterans Affairs ("the Department") on Plaintiff Dom Wadhwa's ("Plaintiff") Complaint. Plaintiff, proceeding pro se, alleges that the Department has failed to comply with his multiple Freedom of Information Act (FOIA) requests, and asks that this Court compel the Department to respond to his requests and award Plaintiff damages. He seeks the production of documents related to employment discrimination claims brought by three physicians against the Philadelphia VA Medical Center ("the Philadelphia VA"). Plaintiff appears to be pursuing his own claims of discrimination against the Philadelphia VA and seeks these documents to assist him in his pending civil action. (See generally Compl.) In response to the Department's Motion for Summary Judgment, Plaintiff has filed two cross-motions, which

the Court construes as a motion for summary judgment.[1]  (See Doc. Nos. 7, 9.)  For the reasons expressed below, Defendant's motion is granted-in-part and denied-in-part without prejudice, and plaintiff's motions are denied without prejudice.

## I. FACTUAL BACKGROUND[2]

On or around January 21, 2015, Plaintiff filed a FOIA request with the Philadelphia VA Medical Center ("Philadelphia VA") outlining twelve specific document requests.[3]  Items 1 through 4 requested a number of documents concerning a Title VII violation that occurred at the Philadelphia VA, including documents related to the decision of Office of Employment Discrimination Complaint Adjudication (OEDCA).  (Russo Decl., Ex. A ¶¶ 1–4, Doc. No. 6.)  He also sought documents concerning the employment of more than twenty-two individuals employed with the Philadelphia VA.  (Id. ¶¶ 5–6.)  Lastly, Plaintiff requested documents relating to the removal of Mukesh Jain, M.D., the discipline of any individual that resulted in a Title VII violation, and any documents relating to the discipline of Plaintiff himself.  (Id. ¶¶ 6–12.)

Lauren Russo ("Russo"), the Acting FOIA Officer at the Philadelphia VA, responded to Plaintiff after conducting a search for the records he requested.  (Russo Decl., Ex. B.)  She informed Plaintiff that she needed clarification on his requests in Items 5 and 6 pertaining to employment records for the Philadelphia VA employees and his requests in Items 11 and 12 concerning disciplinary actions taken against him.  (Id.)  She also determined that the

---

[1] Plaintiff has titled his motions "Motion for Oral Argument And Plaintiff's Brief to Deny the Defendant "Motion for Summary Judgment" and "Motion for Oral Argument, Motion to Compel Discovery, and Motion to Deny Summary Judgment."

[2] When considering a party's motion for summary judgment, the Court views the facts underlying the claims in the light most favorable to the non-moving party.  See Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., 998 F.2d 1224, 1230 (3d Cir. 1993).  In this instance, Plaintiff has not opposed any facts contained in the Department's Rule 56.1 statement.  However, because Plaintiff proceeds pro se, the Court will deem the Department's facts as admitted to the extent they are undisputed by the record.

[3] Plaintiff's FOIA request is itemized in two lists of six.  The FOIA Officers renumbered the second of Plaintiff's list Items 7–12.  For clarity's sake, the Court will also refer to Plaintiff's second list of 1–6 as items 7–12.

Philadelphia VA did not possess documents responsive to Items 1 through 4, which concern the Title VII violation and the related OEDCA determination. She therefore issued Plaintiff a "no records" response, forwarding the request to FOIA Officer Laurie Karnay for further processing. (Id.)  Finally, she forwarded Plaintiff's request for documents related to Gary Devansky in 5b and 6b to Jeffrey Adamson after she determined that the Philadelphia VA did not have the documents in its possession.

By way of letter dated February 10, 2015, FOIA Officer Jeffrey Adamson ("Adamson") also requested clarification from Plaintiff on that request. (Russo Decl., Ex. C.) Plaintiff responded to Adamson and Russo in a joint letter dated February 17, 2015, wherein he reiterated his requests but provided only some of the clarification Adamson and Russo requested.[4] (Russo Decl., Ex. C.)  He also accused Russo and Adamson of intentionally delaying his request. (Id.) Thereafter, Adamson made a good faith effort to understand Plaintiff's request, notifying Plaintiff of the scope of his request as Adamson understood it. (Adamson Decl., Ex. C., Doc. No. 6.)  He produced seventeen pages of documents responsive to Plaintiff's request, but redacted portions containing personal information exempt under FOIA Exemption 6. (Id.)

On March 6, 2015, Russo sent Plaintiff the Department of Veterans Affairs' initial agency decision on his FOIA request. (Russo Decl., Ex. E.)  The decision resulted in the production of documents responsive to Plaintiff's request concerning his performance pay reduction (i.e. request ¶ 10). (Id.)  The remaining requests were not satisfied either because the Philadelphia VA was not in possession of the records (items 1–4, 5b, and 6b) or the records were exempt under FOIA Exemption 6 (item 11). (Id.)  Russo also issued a "refusing to confirm or

---

[4] For example, although Plaintiff clarified the relevant dates for which he was seeking documents, Plaintiff did not clarify a number of Russo and Adamson's points, including, but not limited to, the "relevant search terms to be used in an email search of the potential custodians" and the subjects of the hiring/firing/promotion requests.

deny" response to requests 7, 8, 9, 12 because either a confirmation or denial would compromise the subject's personal privacy.[5] (Id.) Russo gave Plaintiff additional time to clarify his requests in items 5 and 6. (Id.)

On March 10, 2015, Plaintiff again wrote to Russo reiterating many of his previous FOIA requests. (Id. Ex. F.) He requested documents related to Devansky, as well as documents related to the Title VII violation that occurred at the Philadelphia VA. He further asked that the exempted documents be provided with the personal identification information redacted. (Id.) Shortly thereafter, Russo notified that Plaintiff that his FOIA request was being terminated as a duplicate, and provided the contact information for Ms. Karnay, who was then processing the documents outside the possession of the Philadelphia VA. (Russo Decl., Ex. G.)

On April 6, 2015, Plaintiff received a determination on his request concerning the OEDCA finding that a Title VII violation had occurred at the Philadelphia VA Medical Center. (Karnay Decl., Ex. B.) The FOIA Service Director informed Plaintiff that the 827-page OEDCA file was exempt under FOIA Exemption 6, and 219 pages of the file were also exempt under Exemption 5. (Id.) Plaintiff was provided with the necessary information should he wish to appeal the Director's determination. (Id.)

Plaintiff brings suit seeking to compel the production of documents he claims have been unlawfully withheld.[6] He also appears to argue that he is entitled to a fee waiver for his FOIA requests, a request the FOIA Officers denied because Plaintiff had not shown that disclosure of

---

[5] Item 7 requested documents relating to the "removal of Mukesh Jain, M.D." Item 8 requested documents relating to the "*proposed* **reporting the State Licensing Board** of *alleged* misconduct . . . *proposed* removal of Ramesh Gupta, M.D." Item 9 requested documents evidence concerning "the removal or *proposed* removal, or any other disciplinary action" of any employee with the Philadelphia VA, and item 12 requested all documents concerning "steps taken by management officials" with the Philadelphia VA to remedy the relevant Title VII violation. (FOIA Request attached to Russo Decl., Ex. A. (emphasis in original).)

[6] Plaintiff does not appear to be challenging the redaction of personally identifiable information from those documents he did receive. (See generally Pl.'s Opp. Brs., Doc. Nos. 7, 9.)

4

the requested information was in in the public interest.  Defendant moves for summary judgment.  Having been briefed by the parties, the issues are now ripe for the Court's review.

## II.    LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine dispute of material fact exists only if the evidence is such that a reasonable jury could find for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When the Court weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment.  Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996).  The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by "'showing' —that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.

If the party seeking summary judgment makes this showing, it is left to the nonmoving party to "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify

5

those facts of record which would contradict the facts identified by the movant.'" Corliss v. Varner, 247 Fed. App'x. 353, 354 (3d Cir. 2007) (quoting Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2002)).  In deciding the merits of a party's motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249.  Credibility determinations are the province of the fact finder, not the district court. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

District courts should resolve FOIA cases on motions for summary judgment once the documents in issue are properly identified.  See, e.g., Miscavige v. I.R.S., 2 F.3d 366, 369 (11th Cir. 1993); Maryland v. U.S. Dep't of Veterans Affairs, -- F. Supp. 3d. --, 2015 WL 5464682, at *5 (D.D.C. Sept. 17, 2015).  "For an agency to succeed on a motion for summary judgment in a FOIA suit, it must 'prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the (FOIA's) inspection requirements.'" Pipko v. CIA, 312 F. Supp. 2d 669, 674 (D.N.J. 2004) (citing Perry v. Block, 684 F.2d 121, 126 (D.C. Cir. 1982)).  A district court should grant summary judgment in favor of an agency "only 'when the agency's affidavits describe the withheld information and the justification for withholding with reasonable specificity, demonstrating a logical connection between the information and the claimed exemption . . . , and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'"  Id. (citing Davin v. U.S. Dept't of Justice, 60 F.3d 1043, 1050 (3d Cir. 1995)).

### III.  DISCUSSION

Plaintiff seeks to compel the disclosure of documents he alleges were unlawfully withheld under the Freedom of Information Act.  The Freedom of Information Act generally

provides a judicially enforceable right to obtain access to federal agency records, except to the extent that such records, or portions thereof, fall within one of nine exceptions. See 5 U.S.C. § 552(a)(3); Lame v. U.S. Dep't of Justice, 767 F.2d 66, 68 n.1 (3d Cir. 1985). When an agency receives a request for information, the FOIA requires the agency to conduct a "reasonable search" for records that might be responsive to the request. See Abdelfattah v. U.S. Dep't of Homeland Sec., 488 F.3d 178, 182 (3d Cir. 2007). The Third Circuit has held that "[t]he relevant inquiry is not 'whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate.'" Id. (quoting Weisberg v. U.S. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

### A. Reasonableness and Adequacy of the Search

As noted supra, the Agency has submitted the affidavits of FOIA Officers Lauren Russo, Jeffrey Adamson, and Laurie Karnay, each of which details the thoroughness of their respective searches. Mr. Russo's affidavit demonstrates that she forwarded Plaintiff's requests in Items 1-4 and 5b and 6b to the appropriate FOIA Officers who could handle his requests, and while waiting clarification on a number of ambiguities in Plaintiff's remaining inquiries, searched for records responsive to those which Plaintiff had provided some clarification.[7] (Russo Decl. ¶¶ 9-10.) Jeffrey Adamson, to whom Ms. Russo forwarded Plaintiff's request in Items 5b and 6b, also details his search process: he forwarded Plaintiff's request to the appropriate staff member and received relevant records in response. (Russo Decl. ¶¶ 8–10.) Likewise, Laurie Karnay has certified that she contacted the relevant OEDCA personnel and received in response the more

---

[7] She searched the Employee Relations File for records related to Dr. Jain's reassignment, the HR file for Dr. Gupta, personnel disciplinary files related to a finding of discrimination in 2014, and personnel files related to the discipline of Plaintiff. (Russo Decl. ¶ 10.) She also requested all performance pay documents for Plaintiff from Human Resources and searched through the "Compensation and Pension files" for files pertaining to the "administrative mishaps" to which Plaintiff had referred. (Id. ¶ 11.) Plaintiff has suggested no reason why this search is inadequate.

than four-hundred page OEDCA file, all of which she examined and determined to be exempt. (Karnay Decl. ¶¶ 4–5.)

The Court finds that the Russo, Adamson, and Karnay Declarations satisfy the requirement that, "[t]o demonstrate the adequacy of its search, the agency should provide a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched." Abdelfattah, 488 F.3d at 182. Their declarations demonstrate that each officer made reasonable efforts to locate documents responsive to Plaintiff's request—and in multiple instances were successful—despite Plaintiff's broad and vague requests. When Ms. Russo realized her office did not possess documents responsive to Plaintiff's request, she promptly forwarded Plaintiff's request to the relevant offices. Ms. Russo and Mr. Adamson asked Plaintiff to clarify his requests on multiple occasions, and when he failed to do so, they nevertheless undertook a search for responsive records. That Plaintiff did not receive documents responsive to his requests does not appear to be because the officers failed to search for them, but rather because Plaintiff's requests were either overly broad or vague, or sought documents the officer's deemed exempt. Although Plaintiff argues that the Department has not met its burden in demonstrating the reasonableness of its search, Plaintiff does not appear to be suggesting that responsive records exist but were disclosed. (See Pl.'s Opp. Br. 5.) Rather, he objects to the reasons the documents were withheld, a matter wholly separate from whether or not he FOIA officers conducted an adequate and reasonable search. In sum, the officer's certifications satisfy this Court that they performed adequate and reasonable searches in response to Plaintiff's requests.

### B. Appropriateness of Exemptions

District courts review an agency's FOIA determination de novo, 5 U.S.C. § 552(a)(4)(B), and "[t]he burden is on the agency to justify its decision to withhold the requested material." McDonnell v. United States, 4 F.3d 1227, 1241 (3d Cir. 1993).  An agency may meet this burden by submitting affidavits "describing the material withheld and detailing why it fits within the claimed exception." Id. (quoting King v. Dep't of Justice, 830 F.2d 210, 210 (D.C. Cir. 1987)).  Quoting King, the Third Circuit emphasized that "[t]he significance of agency affidavits in a FOIA case cannot be underestimated . . . [W]hen an agency seeks to withhold information, it must provide 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." Id. (quoting King, 830 F.2d at 218–19).

**1. Exemptions 5 and 6**

Plaintiff's FOIA request seeks documents reviewed and considered by OEDCA in rendering its decision that a Title VII violation occurred at the Philadelphia VA (Items 1 & 2), as well as all documents supporting and summarizing the OEDCA's decision (Items 3 & 4).  (Russo Decl., Ex. A.)  The Department denied Plaintiff's request on grounds that the entire 827-page OEDCA file is exempt under 5 U.S.C. § 552(b)(6) ("Exemption 6") because disclosure would constitute a clearly unwarranted invasion of a living person's personal privacy, which Plaintiff had not justified by demonstrating a countervailing public interest.  (Karnay Decl., Ex. B at 2.)  The Department also informed Plaintiff that 219 pages of the OEDCA file were further exempt under 5 U.S.C. § 552(b)(6) ("Exemption 5").

"Exemption 6 of FOIA exempts from disclosure 'personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal

9

privacy.'" Berger v. I.R.S., 288 Fed. App'x 829, 832 (3d Cir. 2008) (quoting 5 U.S.C. § 552(b)(6)). In determining whether Exemption 6 applies to documents withheld, "courts balance the public interest in disclosure against the privacy interest protected by the exemption." Id. (citing Sheet Metal Workers Int'l Ass'n., Local Union No. 19 v. U.S. Dep't of Veterans Affairs, 135 F.3d 891, 897 (3d Cir. 1998)). Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption encompasses the governmental deliberative process privilege. See, e.g., Cuccaro v. Sec'y of Labor, 770 F.2d 355, 357 (3d Cir. 1985); Conoco, Inc. v. U.S. Dep't of Justice, 687 F.2d 724, 727 (3d Cir. 1982). In light of the presumption in favor of disclosure, the agency bears the burden of demonstrating that an exemption applies. Berger, 288 Fed. App'x at 832. To satisfy that burden, the Department must provide a "relatively detailed justification" for withholding the documents. McDonnell, 4 F.3d at 1241.

    Here, Ms. Karnay's declaration does not make any showing as to what the 827-page OEDCA file contains. Defendant's brief cites Sakamoto v. EPA, 443 F. Supp. 2d 1182, 1196–97 (N.D. Cal. 2006) as persuasive authority demonstrating the propriety of withholding discrimination complaints, but even there, the district court based its decision on a Declaration describing the documents in the typical EPA complaint file: "the complaint, correspondence between the complainant and OCR staff, correspondence between the complainant and the EEO counselor, the EEO counselor's report, the Report of the Investigation, and the EPA Headquarters Merit Promotion Supplemental Plan." Here, Ms. Karnay's declaration makes no such showing. Without more information that reasonably describes the contents of the 827-page file, the Court cannot say as a matter of law that withholding the documents was appropriate

under Exemption 6. For this same reason, the Court similarly cannot determine whether the Department properly withheld documents under Exemption 5. The Court therefore denies the Department's motion without prejudice as it pertains to Plaintiff's request in Items 1–4.

**2. Glomar Responses**

The Department provided Plaintiff with a "Glomar Response" to Items 7, 8, 9, 12, meaning that it neither confirmed nor denied the existence of responsive documents.[8] Those items were as follows:

> 7. Produce all documents used as evidence in the evidence folder which resulted in removal of Mukesh Jain, M.D., from his position as Assistant Chief of Staff at PVAMC.
>
> 8. Produce all the documents used as evidence in the evidence folder for proposed **reporting the State Licensing Board** of alleged misconduct (Exhibit B) and proposed removal of Ramesh Gupta, M.D., from his 27-year full-time VA employment as Staff Physician at PVAMC, on or about December 18, 2014;
>
> 9. Produce all documents used as evidence in the evidence folder which resulted in removal or proposed removal, or any other incident/disciplinary action cited as Title VII violation of any employee, from his/her position at PVAMA, that resulted in posting of "Notice to Employees" by Mr. Devansky, on December 2, 2014 (posting expires February 3, 2015) . . .
>
> 12. Produce all documents (of any date, no matter when created, including electronic versions, such as emails, and also attachments to the emails, and training sessions, etc.) of all the steps taken by management officials at PVAMC (Agency) to remedy the discrimination found in OEDCAs Final Action or decision, as stated in "Notice to Employees" by Mr. Devansky, on December 2, 2014 (posting expires February 15, 1015).

---

[8] The Term "Glomar response" refers to the Hughes Glomar explorer, "a large vessel publicly listed as a research ship," which reporters suspected was actually owned and operated by the United States. Phillippi v. CIA, 546 F.2d 1009, 1011 (D.C. Cir. 1976). The Glomar Explorer because the subject of a FOIA request in Phillippi, wherein news organizations sought information related to an allegedly secret operation by the United States government. Id. In Phillipi, the CIA asserted that it could neither admit nor deny the existence of documents related to the Glomar Explorer.
11

(Russo Decl. Ex. A at 2.)  The Department contends that a Glomar response to these requests is appropriate because the requests concern identifiable individuals, and either affirming or denying the existence of such records would compromise the individuals' privacy.  (Def.'s Br. 10.)

"If an individual is the target of a FOIA request, the agency to which the FOIA request is submitted may provide a 'Glomar' response, that is, the agency may refuse to confirm or deny the existence of records or information responsive to the FOIA request on the ground that even acknowledging the existence of responsive records constitutes an unwarranted invasion of the targeted individual's personal privacy."  Lewis v. U.S. Dep't of Justice, 733 F. Supp. 2d 97, 112 (D.D.C. 2010) (citing Phillippi v. CIA, 546 F.3d 1009, 1014–15 (D.C. Cir. 1976)).  Where a FOIA request seeks documents pertaining to investigations of individuals named in the request, courts often find a Glomar request appropriate.  See Beck v. Dep't of Justice, 887 F.2d 1489, 1492 (D.C. Cir. 1993) (finding appropriate a Glomar response to plaintiff's request for investigative records for two named DEA agents); Lewis, 733 F. Supp. 2d. at 113 (same).

The Court agrees with the Department that either confirming or denying the existence of Records responsive to items 7 and 8 would compromise the privacy of the named individuals Mukesh Jain, M.D. and Ramesh Gupta, M.D.  If the Department were to confirm the existence of responsive documents, it necessarily reveals that the individuals have been the subject of disciplinary proceedings.  Here, Plaintiff requests the documents for use in his own civil lawsuit and has identified no public interest justifying that privacy invasion.  Therefore, Defendant's motion for summary judgment is granted with respect to Items 7 and 8.

However, the Court fails to see how a Glomar response, on the justification provided, is appropriate to Plaintiff's requests in Items 9 and 12.  There, Plaintiff is not seeking records for a named individual but rather is seeking records for any individual.  Although the Court can

imagine that such records would contain personally identifiable information exempt under at least one FOIA exemption, it is unclear why, as the Department argues, confirming or denying the existence of documents responsive to the "removal or proposed removal, or any other incident/disciplinary action cited as Title VII violation of any employee. . ." would cause harm to a named individual when Plaintiff does not name any individual in Item 9 or 12.  Even if a Glomar response is appropriate, or if a FOIA exception otherwise applies, the Department has not met its burden in demonstrating as much to the Court.  Even where a Vaughn index is not necessary, as is often the case where a Glomar response has been produced, "[t]he agency . . . must still provide a 'public affidavit explaining in as much detail as possible' the basis for the claimed exception."  Lame, 654 F.2d 917, 921 (3d Cir. 1981).  Here, Ms. Russo's affidavit gives no justification for why the Glomar response is appropriate.  As such, the Court denies Defendant's motion for summary judgment with respect to Items 9 and 12, but will do so without prejudice.  On any future motion for summary judgment, the Department must provide the Court with an affidavit that reasonably details which exemptions apply as well as the basis for those exemptions.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted-in-part and denied-in-part.  Those parts denied are denied without prejudice.  Plaintiff's motions for summary judgment are similarly denied without prejudice.

Dated: 3/11/2016                                         s/Robert B. Kugler
                                                        ROBERT B. KUGLER
                                                        United States District Judge